**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**AT CINCINNATI**
**CASE NO. 12-477-SJD-JGW**

**DAVID OSTIGNY**                                               **PLAINTIFF**

**v.**

**COMMISSIONER OF SOCIAL SECURITY**                      **DEFENDANT**

**REPORT AND RECOMMENDATION**

This is a Social Security appeal filed by plaintiff, through counsel, pursuant to 42

U.S.C. §§ 405(g) and 1383(c)(3).  The main issue presented is plaintiff's contention that the

administrative law judge's (ALJ) decision is not supported by substantial evidence, particularly

in light of the ALJ's failure to consider a narrative report from plaintiff's treating psychiatrist.

Defendant asserts that the decision was supported by substantial evidence and the ALJ acted

properly by not considering the narrative report because it was not timely filed.

**I.  Factual and Procedural History**

Plaintiff David Ostigny was born in 1958 and had a high school education with past

relevant work as a tennis instructor when he applied for Social Security Disability benefits in

2009.  Tr. 115.  Plaintiff alleged a disability due to psychological impairments with an onset date

of August 31, 1995.  *Id.*  After his claims were denied initially and upon reconsideration,

plaintiff requested a hearing before an ALJ.  On January 13, 2011, an evidentiary hearing was

held by ALJ Christopher McNeil, at which plaintiff, represented by counsel, Shoshana Pehowic,

and a vocational expert, Mesha Dowd, testified.  *Id.* at 18-58.

On February 2, 2011, the ALJ issued a decision denying plaintiff's claims.  *Id.* at 9-14.

When the Appeals Council summarily denied plaintiff's request for review on May 1, 2012, the

ALJ's decision became defendant's final determination.  *Id.* at 1-3.

1

The ALJ's "Findings of Fact and Conclusions of Law," which represent the rationale of the decision, were as follows:

1.  The claimant met the insured status requirements of the Social Security Act on March 31, 2002 [DLI].

2.  The claimant did not engage in substantial gainful activity during the period from his alleged onset date of August 31, 1995, through his date last insured of March 31, 2002 (20 CFR 404.1571 *et seq*.).

    ……………………..

3.  Through the date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment (20 CFR 404.1520(c)).

    ……………………..

4.  The claimant was not under a disability, as defined in the Social Security Act, at any time from August 31, 1995, the alleged onset date, through March 31, 2002, the date last insured (20 CFR 404.1520(c)).

*Id.* at 11-14.

**II.  Analysis**

**A.  Standard of Review**

In a Social Security appeal, the Court is to determine whether the ALJ's non-disability finding is supported by substantial evidence and ensure no error of law was committed.  42 U.S.C. §§ 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation mark and citation omitted).  In conducting this review, the Court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed,

even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v.*

*Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.  The substantial evidence standard presupposes that there is a zone of choice within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (quotation marks and citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the SSA asks if the claimant is still performing substantial gainful activity; at Step 2, the SSA determines if one or more of the claimant's impairments are "severe;" at Step 3, the SSA analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the SSA determines whether or not the claimant can still perform his or her past relevant work; and finally, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  20 CFR §§ 404.1520, 416.920; *Combs v.  Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

The plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits.  20 C.F.R. §§ 404.1512(a), 416.912(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy.  42 U.S.C. §§ 423(d)(1)(A), 1382(c).

**B.  Failure to Consider Dr. Johnson's January 2011 Narrative Report**

Chief among plaintiff's rationale for arguing that the ALJ's conclusions are not supported by substantial evidence is the ALJ's failure to mention in his decision a narrative statement from January 2011 prepared by Dr. Jennifer Johnson, plaintiff's treating psychiatrist. In relevant part, the narrative statement provides that Dr. Johnson has seen plaintiff "intermittently" since 1999 and that at first plaintiff was "very depressed and non-functional" but "[h]is depression improved somewhat with treatment to the extent he was no longer thinking of suicide.  Unfortunately, he [plaintiff] never did regain work-level functioning." Tr. 355.  Dr. Johnson concludes that plaintiff's "current inability to function in a work setting has been present since 1999.  This is confirmed by his being fired from every employment he obtained since then, and by his inability to even build his own house in 6 years of effort despite being a general contractor with the necessary skills." *Id.*

In his ruling, the ALJ discussed prior reports from Dr. Johnson but did not mention Dr. Johnson's January 2011 narrative report.  Plaintiff contends the lack of discussion of Dr. Johnson's 2011 narrative report is an error of sufficient magnitude to require reversal.  Though not mentioned by plaintiff in his statement of specific errors, however, defendant correctly points out in its response that the 2011 narrative report was not timely filed.

At the January 13, 2011 hearing, the ALJ clearly stated that if plaintiff needed "additional time to submit evidence or written arguments after the hearing, you have to do so within seven days of today.  If the material is not received by January 20, 2011, absent a written application and a finding of good cause to extend the time, I will issue a decision without the material." Tr. 22.  Plaintiff's counsel voiced no objection to the ALJ's stated deadline for submitting additional evidence, did not inform the ALJ that plaintiff planned to submit post-

4

hearing evidence, and never sought an extension of the deadline at any point after the hearing

ended.  Moreover, though it is not clear what date Dr. Johnson's report was received by the ALJ,

the accompanying cover letter is dated February 1, 2011 and the cover letter provides that

plaintiff's counsel received the report on January 31, 2011.  *Id.* at 354.  In the terse cover letter,

plaintiff's counsel makes no attempt whatsoever to show why the ALJ should have considered

the tardy narrative report.  Because the report was not submitted until over ten days after the

expiration of the deadline for submitting post-hearing evidence, the ALJ did not err by failing to

address the report.[1]  *See, e.g., Franson v. Commissioner of Social Sec.*, 556 F.Supp.2d 716, 724

---

[1]The Court is statutorily authorized to order the case remanded to the ALJ for the consideration of "new evidence which is material" but may do so only if "there is good cause for failure to incorporate such evidence into the record in a prior proceeding . . . ." 42 U.S.C. §405(g).  Plaintiff stresses the ALJ's failure to consider the narrative report but completely failed to mention in his statement of specific errors that the report was tardily submitted.  Even after defendant pointed out the tardy nature of the report plaintiff only notes in passing in a footnote in his reply that he submitted the narrative report "as soon as it was available[.]" Doc. 21, p. 10, n.9.

Plaintiff does not even attempt to explain why he did not make a cursory attempt to explain the tardiness of the report to the ALJ or why plaintiff did not seek an extension of the January 20 deadline when he had not received the report from Dr. Johnson by that date.  Even now plaintiff has not explained what steps he took, if any, to attempt to get Dr. Johnson to complete the report in time to comply with the deadline for submitting evidence.

In order to satisfy the good cause requirement a plaintiff must "demonstrat[e] a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  "'Good cause' is *not* established solely because the new evidence was not generated until after the ALJ's decision; the Sixth Circuit has taken a 'harder line' on the good cause test." *Miller v. Commissioner of Social Sec.*, 848 F.Supp.2d 694, 712 (E.D.Mich. 2011).  Plaintiff's unadorned statement that he did not file the report in a timely manner simply because it was not available at the deadline for submitting post-hearing evidence falls well short of satisfying the good cause standard.

In addition, plaintiff has not met the additional requirement that the statement be material.  "Material evidence is evidence which creates the reasonable possibility that, if it were considered, the Secretary would be influenced to decide the case differently.  Evidence that is cumulative does not qualify as new evidence." *Robertson v. Shalala*, 91

(W.D.Mich. 2008) (holding that "the ALJ was under no obligation to consider the 'evidence' that plaintiff attempted to dump unceremoniously into the record months after the close of proofs."). Moreover, since the Court's review is "limited to the evidence presented to the ALJ[,]" *Franson,* 556 F.Supp.2d. at 724, and the narrative report was not evidence timely and properly presented to the ALJ the narrative report should not be considered by the Court.[2]

## B. Substantial Evidence

In addition to arguing that reversal is mandated due to the ALJ's failure to consider the narrative report, plaintiff also contends that the ALJ's decision "is based on errors of fact and thus is not supported by substantial evidence[.]" Doc. 12, p.6 (emphasis omitted). Plaintiff relates three main purported factual errors.

First, plaintiff contends that the ALJ erred by finding that plaintiff had not begun treating with Dr. Johnson until 2005. The ALJ's ruling does state that Dr. Johnson "indicates that she first saw the claimant in December 2005, which is after the last date insured." Tr. 13. This recitation by the ALJ is consistent with one of Dr. Johnson's reports, in which she inaccurately states that she first saw plaintiff in 2005. Tr. 194. Thus, the ALJ was only reciting back

---

F.3d 144, at *3 (6th Cir. July 8, 1996) (unpublished) (citation omitted). Plaintiff himself argues that the other reports from Dr. Johnson were sufficient to support a disability finding, thereby greatly minimizing the significance and effect of the January 2011 narrative report. *See* Doc. 21, p. 9-10 ("Defendant's arguments imply that only Dr. Johnson's final opinion, rendered in January 2011, support a finding of disability prior to the DLI [date last insured], but in reality, Dr. Johnson's November 2010 opinion also addresses that time frame."). Taking all the facts and circumstances into account a remand would be inappropriate.

[2]Plaintiff did discuss the narrative report in his pleading before the Appeals Council. Tr. 189-90. However, the Sixth Circuit has held that "where the Appeals Council considers new evidence but declines to review a claimant's application for disability benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision." *Cline v. Commissioner of Social Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993)).

information first set forth by Dr. Johnson.  Examining the remainder of the ALJ's opinion, however, makes clear that the ALJ was well aware that Dr. Johnson actually began seeing plaintiff in 1999.  On the same page of his ruling where Dr. Johnson's erroneous statement about treating plaintiff first in 2005 is set forth, the ALJ notes that plaintiff stated that he first saw Dr. Johnson in "the 1990's" [sic] and that "Dr. Johnson's treatment notes . . . reflect successful treatment briefly in 1999 . . . ."  Tr. 13.

Plaintiff next argues that the ALJ made "[a]nother factual error . . . [by concluding] that Plaintiff 'continued to work in his contractor job throughout 1999 to 2008[.]'"  Doc. 12, p.7 (quoting Tr. 13).  Plaintiff contends he only worked on trying to build a house for himself, not as a general contractor for others, beginning in late 1999 or early 2000.  To support his time line, plaintiff relies on a statement in a counseling note by Dr. Johnson from September 1999 which provides in relevant part that "[f]or the first time he [plaintiff] was talking about the future and maybe to build some houses on some land he owned in Connecticut."  Tr. 272.  However, Dr. Johnson's June 1999 notes provide that plaintiff "is a home improvement contractor . . . ."  Tr. 280.  In Dr. Johnson's January 2006 notes there is a notation that plaintiff was "looking forward to working on Ohio properties . . . ."  Tr. 327.  Similarly, in Dr. Johnson's August 2007 progress note there is a statement that plaintiff's "[h]ouses all go into foreclosure next month if something doesn't sell."  Tr. 308.  Accordingly, there is substantial evidence to support the ALJ's statement that "there is at least some evidence that he [plaintiff] may have been working on a full-time basis as a self-employed construction contractor."  Tr. 11.

The final factual error alleged by plaintiff is the ALJ's statement that "Dr. Johnson's treatment notes . . . reflect successful treatment briefly in 1999, for depressive symptoms, with prescribed medication."  *Id.* at 13.  Dr. Johnson's September 1999 notes provide that plaintiff

"comes in looking much better, saying he is actually starting to feel good for a change.  He is also starting to enjoy things and is blaming himself less for things and for the first time . . . [is] beginning to feel positive about life."  *Id.* at 272.  In addition, an August 1999 note by a social worker states that plaintiff "thinks things are going fairly well and his response to the medication is good."  *Id.* at 279.  There is substantial evidence, therefore, to support the ALJ's conclusion that plaintiff's treatment was briefly successful in 1999.[3]

Plaintiff contends that the three aforementioned "factual errors" committed by the ALJ caused the ALJ to improperly end his inquiry at Step 2 of the sequential analysis.  According to plaintiff, "ALJ McNeil's multiple errors of fact led him to improperly conclude that Plaintiff had no medically determinable impairment (and thus no 'severe' impairment) prior to the expiration of the DLI.  Therefore, the ALJ prematurely ended the Sequential Evaluation of Plaintiff's claim."  Doc. 12, p. 10 (citation to the record omitted).  However, as previously discussed, the ALJ did not commit the "factual errors" alleged by plaintiff as there is substantial evidence to support the ALJ's findings with which plaintiff takes issue.  Therefore, plaintiff's argument that those alleged factual errors caused the ALJ to end improperly his analysis at Step Two must fail.

Plaintiff next contends that the ALJ's decision is not supported by substantial evidence because the ALJ "failed to properly weigh the medical opinion evidence . . . ."  Doc. 12, p. 11 (emphasis omitted).  Much of plaintiff's argument is centered around the narrative report of Dr. Johnson previously discussed.  Any argument regarding the narrative report is without merit.  In

---

[3]Plaintiff takes issue with the ALJ's deeming his treatment in 1999 "successful" by pointing out that his dosage of medication was intermittently increased and he continually suffered from psychiatric issues, such as perpetually picking at a lesion on his nose.  However, the ALJ did not find that plaintiff was "cured" in 1999; only that his treatment had, at least for awhile, been successful. Given the improvement noted in plaintiff's medical records in 1999, that conclusion is supported by substantial evidence.

addition, plaintiff contends there is other evidence in the record showing that plaintiff had severe limitations due to his psychiatric difficulties.

The fact that some evidence might support a conclusion that plaintiff is entitled to benefits is not controlling.  Instead, the overarching question is whether the ALJ's decision is supported by substantial evidence.  Viewed in that light, plaintiff's argument must fail.

The record does not contain a plethora of information regarding plaintiff's alleged disability prior to his 2002 DLI.  As discussed previously, however, there are reports and notes from 1999 which indicate that plaintiff's condition was improving.  At the hearing, when asked by the ALJ about needing to take naps between 1995 and 2002, plaintiff responded that it was "hard to remember that far back." Tr. 27.  Because plaintiff had experienced suicidal thoughts, he was asked at the hearing if between 1995 and 2002 he had thought out an actual plan as to how he would commit suicide, plaintiff stated "I can't remember back then." Tr. 38.

Other than the progress reports from 1999 which demonstrated that plaintiff's mental condition had improved, the medical records from the relevant time period are mainly related to the lesion on plaintiff's nose (which plaintiff does not argue is a freestanding disabling condition).  The records regarding plaintiff's psychiatric difficulties mainly consist of brief, one or two line notations regarding plaintiff's medications.  Tr. 264-65, 270, 273, 276.  Plaintiff himself admits that the evidence regarding plaintiff's impairment after 1999 is "not ideal[.]"[4] Doc. 21, p. 9.

In addition, Dr. Johnson opined in a questionnaire in March 2009 that plaintiff's symptoms have only been "severe since 2005.  Escalating for . . . [about] ten years before that." Tr. 196.  The ALJ gave the greatest weight to Dr. Johnson's March 2009 report, the plain

---

[4]Though the alleged onset date is 1995, the record contains virtually no evidence regarding plaintiff's pre-1999 condition.

9

language of which leads to a conclusion that plaintiff only began suffering from a severe condition in 2005–some three years after plaintiff's 2002 DLI. Accordingly, taking into account the entire record, there is substantial evidence to support the ALJ's conclusion that plaintiff had not demonstrated a severe, medically determinable impairment prior to his 2002 DLI.

### C. Plaintiff's Credibility

Plaintiff's final assignment of error is that the ALJ erred by not properly assessing plaintiff's credibility. However, "[i]f the claimant is found to be conclusively disabled or not disabled at any step, the inquiry ends at that step." *Rabbers v. Commissioner Social Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009). Having found that there was insufficient relevant medical evidence to find that plaintiff had not demonstrated a severe, medically determinable impairment, the ALJ was permitted to end his analysis at Step Two of the sequential process without making a formal assessment of plaintiff's credibility.

### III. Recommendation

For the reasons explained herein, **IT IS RECOMMENDED**:

The ALJ's non-disability finding be **AFFIRMED**.

Particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *see also U.S. v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are

insufficient to preserve the right of appeal.  *Howard*, 932 F.2d at 509.  A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

        This, the 29th day of August, 2013        s/ J. Gregory Wehrman
                                                            J. Gregory Wehrman
                                                            United States Magistrate Judge

G:\Larry\Soc Sec\12-477CINCY, OSTIGNY R&R.wpd